UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE – OPELOUSAS DIVISION

| UNITED STATES OF AMERICA | CRIMINAL NO. 6:05-cr-60047-01 |
| | CIVIL NO. 6:09-cr-1997 |
| VERSUS | JUDGE DOHERTY |
| MICKEY MARCEL PATT | MAGISTRATE JUDGE HANNA |

## REPORT  AND  RECOMMENDATION

(Rec. Doc. 155)

Pending before this Court is Mickey Marcel Patt's *pro se* motion, brought pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence (Rec. Doc. 155).   This matter was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court.  The respondent was served and has filed an answer as well as a memorandum in response to the motion.

For the following reasons, it is recommended that the motion be DENIED.

### FACTUAL  BACKGROUND

On the night of April 3, 2005, Corporal Thomas Mercier of the Lafayette City Police Department observed the defendant, Mickey Marcel Patt, driving a highly-

customized candy apple red Cadillac in the "Simcoe strip" area of Lafayette, Louisiana.  The Cadillac featured neon lights illuminating a sign that read "loved by few, hated by many," and a "pop trunk" with twelve custom-fitted speakers.[1]  Officer Mercier noted that the music blaring from the Cadillac was excessively loud and caused the Cadillac to vibrate.[2]  He also noticed that Patt was not wearing a seat belt.[3]  Because Mercier was travelling in a direction opposite that of Patt, and because the heavy traffic made it impractical to turn around, Mercier radioed another member of his street level narcotics team, Officer James Benoit, and asked him to stop Patt's vehicle.[4]  After stopping the vehicle, the police officers observed that the passenger in Patt's vehicle, Roger Fontenette, was holding an open alcoholic beverage container between his legs and another between his feet on the floorboard.[5]  When Officer Benoit removed Fontenette from the vehicle, he detected the odor of burning

---

[1]     Trial Transcript at 172.

[2]     Trial Transcript at 174.

[3]     Trial Transcript at 175.

[4]     Trial Transcript at 174, 256, 273.

[5]     Trial Transcript at 257-258.

marijuana.[6]  Benoit's routine pat-down of Fontenette located a bag of marijuana in his pocket; another bag of marijuana was later discovered in Fontenette's crotch.[7]

When the marijuana odor was noted, Officer Mercier requested permission to search the vehicle, which Patt denied.[8]  Officer Mercier then requested the assistance of a K-9 unit, which gave a positive alert on the Cadillac.[9]  The officers searched the vehicle and discovered two firearms located beneath the front seat console.[10]  A subsequent check of the NCIC system revealed that one of the firearms had been reported stolen and that both of them had previously travelled in interstate commerce.[11]  Both firearms functioned when tested.[12]

The Cadillac was registered in Patt's name, title having been transferred to him on March 18, 2005 by Mary Fontenette, Roger Fontenette's mother.[13]  Patt was driving the vehicle, and Roger Fontenette was his only passenger.  Mary Fontenette

---

[6]     Trial Transcript at 258, 283.

[7]     Trial Transcript at 258, 281.

[8]     Trial Transcript at 176.

[9]     Trial Transcript at 176, 211.

[10]    Trial Transcript at 268-269.

[11]    Trial Transcript at 259-279, 423-424.

[12]    Trial Transcript at 303-304.

[13]    Trial Transcript at 310.

testified at trial that Patt had actually taken possession of the Cadillac one to two months prior to the formal title transfer.[14]  The vehicle had previously been owned by Roger Fontenette, who had transferred ownership to his brother Edward, who had then transferred ownership to their mother, Mary, before she transferred it to Patt.[15]

The Cadillac was originally maroon or burgundy with a similarly-colored interior.  At some point between approximately 1998 and 2000, extensive customization work was performed on the vehicle by Frugé Custom Upholstery and an exterior paint contractor.  The exterior paint was changed to candy apple red; the interior color was changed to peanut butter or tan; and a Playstation 2, fifth wheel, grill, TV monitors, custom steering wheel, trunk speaker box, and custom console were installed.[16]  Amos Frugé, Jr. testified at trial that Patt contracted with him for the customization work and that Patt paid him for the work.[17]  Although Frugé Custom Upholstery had no records or receipts for their work, Darlene Frugé, Amos Frugé, Sr., and Amos Frugé, Jr. all testified that the customization work was done approximately

---

[14]     Trial Transcript at 319.

[15]     Trial Transcript at 309.

[16]     Trial Transcript at 354-378.

[17]     Trial Transcript at 375.

five to seven years before the 2005 investigation, suggesting that the Cadillac was customized at some point between about 1998 and 2000.[18]

On the first day that he testified at trial, Amos Fruge, Jr. stated unequivocally that Patt was the person who contracted with him and paid him for the customization of the vehicle and also for some repairs performed later.[19] The next day, when he was recalled as a defense witness, however, Amos Jr. testified to the contrary, stating that he was not sure if it was Patt or someone else who contracted for the initial customization work.[20] On cross-examination, the government's counsel confronted Amos Jr. with his sworn grand jury testimony, in which he had previously testified that Mickey "Pratt" or "Prett" had requested that he customize the Cadillac.[21]

Patt was arrested following the traffic stop, and his Cadillac was towed to a storage lot operated by Glenn Faul of Glenn's Towing & Recovery.[22] Someone broke into the storage lot and damaged the Cadillac.[23] Patt took the Cadillac back to

---

[18]     Trial Transcript at 335-336. 341-342, 378-379, 511.

[19]     Trial Transcript at 375, 382.

[20]     Trial Transcript at 517-518.

[21]     Trial Transcript at 525.

[22]     Trial Transcript at 393-394.

[23]     Trial Transcript at 395.

Frugé's Custom Upholstery for repairs.[24]  Amos Jr. testified that the Cadillac had been extensively damaged.  In particular, the console had been torn up and needed repair.[25]  Faul paid for the repairs.[26]

Patt was indicted in August 2005, with one count of possession of firearms by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count One), and one count of forfeiture pursuant to 18 U.S.C. § 924(d)(1) (Count Two).[27]  In September 2005, Patt entered not guilty pleas to these charges,[28] and he was detained pending trial.[29]

After a four-day jury trial, Patt was found guilty of being a convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).[30]  Judgment was entered on November 21, 2007, and amended on November 27, 2007, with Patt sentenced to 115 months imprisonment with credit for time served, to be followed by a three-year term of supervised release.[31]

---

[24]     Trial Transcript at 382.

[25]     Trial Transcript at 522.

[26]     Trial Transcript at 395-397.

[27]     Rec. Doc. 1.

[28]     Rec. Doc. 10.

[29]     Rec. Doc. 12.

[30]     Rec. Doc. 114.

[31]     Rec. Doc. 120, 122.

Patt filed a motion for the appointment of appellate counsel, which was granted,[32] and a notice of appeal.[33]  The Fifth Circuit Court of Appeals affirmed the trial court's judgment in an unpublished opinion styled *United States v. Patt*, 305 Fed. App'x 218 (5th Cir. 2008).[34]

Patt then filed this timely motion to vacate, alleging that he received ineffective assistance of counsel at trial.[35]  The government filed an answer and a memorandum in support of its answer.[36]

## ANALYSIS

All three grounds for relief articulated in Patt's briefing are ineffective assistance of counsel claims.  The Sixth Amendment guarantees criminal defendants the "right to effective assistance of counsel at every critical stage of the proceedings against them."[37]  This right "is denied when a defense attorney's performance falls

---

[32]    Rec. Doc. 121, 126.

[33]    Rec. Doc. 124.

[34]    Rec. Doc. 148.

[35]    Rec. Doc. 155.

[36]    Rec. Docs. 166, 166-1.

[37]    *Burdine v. Johnson*, 262 F.3d 336, 344 (5th Cir. 2001).

below an objective standard of reasonableness and thereby prejudices the defense."[38] Ineffective assistance of counsel claims are reviewed under a two-prong test established by the United States Supreme Court.  A defendant must demonstrate:  (1) that his attorney's representation was deficient because it fell below an objective standard of reasonableness; and (2) that the attorney's deficient performance prejudiced the defendant.[39]  The defendant bears the burden of establishing both prongs of the test, and failure to establish either prong is fatal to the claim.[40]

In analyzing the first part of the test, judicial scrutiny of an attorney's performance must be "highly deferential," and the court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's alleged conduct, and to evaluate the conduct from counsel's perspective at the time."[41]  There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[42]

---

[38]     *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003) (citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)).

[39]     *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  See, also, *United States v. Franks*, 230 F.3d 811, 813 (5th Cir. 2000); *United States v. Garcia*, 77 F.3d 857, 859 (5th Cir. 1996).

[40]     *U.S. v. Franks*, 230 F.3d at 813; *Tucker v. Washington*, 115 F.3d 276, 281 (5th Cir. 1997).

[41]     *Strickland v. Washington*, 466 U.S. at 689.

[42]     *Strickland v. Washington*, 466 U.S. at 689.

The second part of the test, prejudice, is satisfied only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[43] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[44] Thus, to establish prejudice, Patt must show a reasonable probability that he would have prevailed at trial had his counsel done those things Patt now claims should have been done during trial.

**Issue One**

Patt claims that he received ineffective assistance of counsel at trial because his attorney failed to adequately investigate the circumstances surrounding his arrest and his alleged possession of the firearms found in the Cadillac.  In particular, Patt claims that his lawyer was ineffective for failing to obtain fingerprint evidence on the firearms or "hidden compartment" in the vehicle's console, for failing to substantiate the dates of his prior incarceration, and for failing to obtain receipts establishing the dates when the Cadillac was customized.

---

[43]    *Strickland v. Washington*, 466 U.S. at 694.

[44]    *Strickland v. Washington*, 466 U.S. at 694.

An attorney has a duty to independently investigate the charges against his client.[45]  The United States Supreme Court instructed that:

> [C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.[46]

A lawyer's investigation must be reviewed objectively and "measured for reasonableness under prevailing professional norms, which includes a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time."[47]  The reasonableness of an investigation is based on the evidence already known to the defendant's counsel plus an inquiry into whether the known evidence would lead a reasonable attorney to investigate further.[48]  There is a strong presumption that an attorney's conduct falls within the wide range of reasonable professional assistance,[49] and ineffective assistance of counsel may not be

---

[45]  *Bower v. Quarterman*, 497 F.3d 459, 467 (5th Cir. 2007), citing *Wiggins v. Smith*, 539 U.S. 510, 524 (2003).

[46]  *Strickland v. Washington*, 466 U.S. 668, 691 (1984).  See, also, *Woodfox v. Cain*, 609 F.3d 774, 806 (5th Cir. 2010); *Gregory v. Thaler*, 601 F.3d 347, 353 (5th Cir. 2010).

[47]  *Woodfox v. Cain*, 609 F.3d at 811, citing *Wiggins v. Smith*, 539 U.S. at 523.

[48]  *Woodfox v. Cain*, 609 F.3d at 806, citing *Wiggins v. Smith*, 539 U.S. at 527.

[49]  *Strickland v. Washington*, 466 U.S. at 689.

found merely because the court disagrees with a lawyer's trial strategy.[50] Furthermore, "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."[51]

Patt faults his attorney for failing to have the firearms and the Cadillac's custom console tested for fingerprints.  He suggests that his fingerprints would not have been found on the console or on the firearms.  What he fails to consider is that while finding his fingerprints on the firearms or the console would have supported the government's claim that the firearms were in his possession and under his control at the time of his arrest, a lack of his fingerprints on either would not conclusively establish that the firearms were not in his possession or under his control at the time of his arrest.  Any fingerprints that might have been on the firearms or the console at some time in the past could have been wiped off.  Furthermore, by the time Patt was indicted and retained counsel, the Cadillac had been vandalized.  When it was taken in to Frugé's Custom Upholstery for repair, after the damage was discovered at the

---

[50]    *Wesbrook v. Thaler*, 585 F.3d 245, 251 (5th Cir. 2009), citing *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999).

[51]    *Carty v. Quarterman*, 345 Fed. App'x 897, 903 (5th Cir. 2009), citing *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

tow shop's lot, the console was in pieces in the back seat of the car.[52]   Any fingerprints found at that time would not have been relevant, and the absence of Patt's fingerprints, if established, could have resulted from the repair of the console.

Finally, Patt's attorney made a point of emphasizing to the jury that there was no fingerprint evidence to link Patt to the console or the firearms.[53]  Assuming that Patt was correct and his fingerprints would not have been found on the firearms or the console, gathering fingerprint evidence from the firearms and the console would not have made any difference whatsoever.  Thus, the attorney's decision not to obtain fingerprint evidence was a reasonable one that did not prejudice Patt's defense.

Patt next faults his attorney for failing to investigate and document the precise dates of his prior incarceration, claiming that a more thorough investigation would have revealed that he was incarcerated during the time period that the Cadillac was customized.  Presumably, it is Patt's position that if he was incarcerated when the customization work was performed, then he could neither have contracted for the customization work nor paid for it.

Patt apparently claims to have been incarcerated continuously from February 23, 1996 until April 6, 2004.  The government presented evidence in the form of

---

[52]     Trial Transcript at 522.

[53]     Trial Transcript at 270-271, 275, 298-301, 531.

testimony from a Louisiana Probation and Parole Officer, which established that, when Patt was arrested in April 2005, he had previously been convicted of another felony.[54]  The evidence adduced at trial established that he was sentenced on February 23, 1996 to serve a ten year sentence, with five years suspended.[55]  Records from the probation office were introduced into evidence,[56] and the probation officer testified that she believed Patt served seven years because there was another felony conviction that revoked his original 10-year sentence.[57]  Thus, there appear to have been some relevant periods of time when Patt was not incarcerated.

The defense cross-examined the government's witness[58] and also called another probation and parole office who testified that Patt was released to good time parole supervision after the second conviction on April 6, 2004.[59]  It appears that all of the records maintained by the state concerning Patt's prior convictions were offered into evidence.   Thus,  the  government  and  defense  counsel  presented  the  available evidence concerning Patt's periods of incarceration.  It is unlikely that any further

---

[54]     Trial Transcript at 154-159.

[55]     Trial Transcript at 159.

[56]     Trial Transcript at 156; Government Exhibits 25-29.

[57]     Trial Transcript at 163.

[58]     Trial Transcript at 160-165.

[59]     Trial Transcript at 542.

investigation would have turned up any documents other than those offered into evidence at trial. Any further investigation would have been fruitless. Consequently, the investigation undertaken by Patt's counsel was reasonable under the circumstances and did not prejudice his defense.

Patt also contends that his attorney was ineffective because his investigation failed to document the dates when the customization work on the Cadillac was performed or to produce receipts for that work. Amos Frugé, Sr., Darlene Frugé, and Amos Frugé, Jr. all testified at trial. It is undisputed that their company, Frugé Custom Upholstery, did the customization work.[60]   But they had no records establishing the dates on which the work was performed.[61]  They estimated that the work was done approximately five to seven years prior to Patt's arrest in April 2005.[62] If the Frugés have no records, then there simply are no records, and no amount of additional investigation could reasonably be expected to locate documentary evidence of the dates when the work was performed.

Further, even if Patt was not the person who ordered the customization of the Cadillac, Amos Frugé, Jr. testified that there could be no access to the "hidden

---

[60]    Trial Transcript at 330-334, 338-339, 355-378.

[61]    Trial Transcript at 345.

[62]    Trial Transcript at 335-336, 341-342, 378-379, 511.

-14-

compartment" where the firearms were found without breaking the seal of the custom-made console.[63]  He also testified that breaking the seal would be apparent to anyone viewing the console.[64]   Therefore, even if Patt did not have the console constructed, it would have been apparent to him, as the owner and driver of the vehicle at the time of the arrest, that the seals were broken.  It would be reasonable to infer that, with knowledge that the seals were broken, Patt could have stored the firearms in the console.  That makes the actual dates of the customization work irrelevant to the issues of whether Patt knew the firearms were stored in or below the Cadillac's custom console and whether Patt had control or dominion over the firearms when he was arrested.  Consequently, Patt's counsel's investigation of the dates of customization was reasonable under the circumstances.

Finally, Patt's contention that his attorney should more thoroughly have investigated the facts concerning his arrest is actually nothing more than a renewed argument that the government failed to prove that he had knowledge of the firearms concealed in the Cadillac.  That is precisely the same argument he raised on appeal.  As the Fifth Circuit noted in its opinion affirming Patt's conviction, "Patt argues that the Government failed to prove that he had knowledge of the firearms concealed in

---

[63]        Trial Transcript at 519-522.

[64]        Trial Transcript at 522.

the console of his vehicle...."[65]   The Fifth Circuit further noted that "[t]he only disputed element at trial was whether Patt knowingly possessed the firearms."[66] Thus, whether the government presented sufficient evidence to support Patt's conviction was raised on appeal and decided by the Fifth Circuit, which found that the "evidence raised a plausible inference that Patt exercised dominion and control over the firearms found in the Cadillac's console."[67]

It is well settled in the Fifth Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not to be considered in a subsequent § 2255 motion.[68]   Therefore, Patt's argument that his counsel's investigation of the circumstances surrounding his arrest in April 2005 was unreasonable should not be considered.  It is nothing more than a reiteration of his argument on appeal that the evidence presented at trial was insufficient to support his conviction.  For these reasons, the first issue raised in Patt's motion lacks merit.

---

[65]     *United States v. Patt*, 305 Fed. App'x at 1.

[66]     *United States v. Patt*, 305 Fed. App'x at 1.

[67]     *United States v. Patt*, 305 Fed. App'x at 2.

[68]     *United States v. Webster*, 392 F.3d 787, 791 (5th Cir. 2004); *United States v. Rocha*, 109 F.3d 225, 229 (5th Cir. 1997); *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986); *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980).

## Issue Two

Patt next claims that he received ineffective assistance of counsel at trial because of cumulative errors by his trial counsel – namely, his counsel's failure to call certain witnesses to testify at trial, his counsel's failure to familiarize himself with the facts during pretrial motion practice, his counsel's failure to seek dismissal of the indictment, and his counsel's alleged conflict of interest.

### a.   FAILURE TO CALL WITNESSES

Patt contends that his trial counsel was ineffective because he did not call certain witnesses to testify at trial.  "Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain."[69]  Therefore, "to prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the

---

[69]     *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010), citing *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985); *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983).

testimony would have been favorable to a particular defense."[70]   In this case, Patt

faults his trial counsel for failing to call Mary Savoie, Mary Savoie's mother, and

Roger Fontenette to testify at trial.

Patt claims that, if called to testify, Ms. Savoie "would have testified that the

car was really hers; that Petitioner knew nothing about the hidden compartment; the

guns were hers; that Petitioner did not know the firearms were in the car."[71]   In fact,

Ms. Savoie did testify in that fashion at Patt's detention hearing.[72]   But the

government exposed her testimony as false, and the magistrate judge "concluded that

Savoie's testimony lacked credibility."[73]   Mary Fontenette's trial testimony

contradicted much of Savoie's testimony at the detention hearing.   In particular,

Fontenette testified that she owned the Cadillac until she sold it to Patt.[74]  This was

corroborated by the vehicle's title registration document.  Although Savoie testified

at the detention hearing that she had the Cadillac customized, she could not identify

---

[70]     *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).  See, also, *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).

[71]     Rec. Doc. 155-1 at 5.

[72]     See Transcript of Detention Hearing.

[73]     Rec. Doc. 59 at 2.

[74]     Trial Transcript at 309, 315.

-18-

where the work was done, how much it cost, or when it was done.[75]  The Frugés did not identify her as the person who requested or paid for the customization.

Patt's counsel was aware of Savoie's testimony at the detention hearing and, in a strategic move, he released Savoie from the defense subpoena after the government stated that she would not be called upon to testify.[76]  The trial court judge considered extensive argument concerning the propriety of Savoie testifying as a rebuttal witness.[77]  The judge ultimately refused to allow the government to call her in rebuttal.[78]  Further, Savoie's counsel recommended that she not testify at trial but, instead, invoke her Fifth Amendment privilege against self-incrimination.[79]  Had she testified at Patt's trial, she likely would have been prosecuted for perjury. Consequently, the defense counsel's strategy of avoiding calling her to testify was reasonable.  Although Savoie may have testified favorably to Patt had she been called upon to testify, it is unlikely that her testimony would have been found credible or would have changed the outcome of his trial.  Therefore, Patt's counsel was not ineffective because he failed to call Savoie at trial.

---

[75]    See Transcript of Detention Hearing.

[76]    Trial Transcript at 408.

[77]    Trial Transcript at 497-499, 544-573.

[78]    Trial Transcript at 571-572.

[79]    Trial Transcript at 550-551.

Patt next contends that his counsel was ineffective for failing to call Mary Savoie's mother to testify at trial, suggesting that she would have testified that Mary Savoie owned the Cadillac.[80]   Yet again, this testimony, if given, would have contradicted the testimony of Mary Fontenette that she sold the vehicle to Patt, and it would have contradicted the vehicle's registration documents, which showed that Patt owned the Cadillac at the time of his arrest.  Furthermore, there is no evidence as to Savoie's mother's name or her availability to testify at trial.  Patt's counsel should not be faulted for failing to call her to testify at trial.

Next, Patt argues that his counsel was ineffective because he did not call upon Roger Fontenette, his passenger on the night of his arrest, to testify at trial.  Patt argues that Fontenette would not have testified but would have asserted his Fifth Amendment privilege against self-incrimination and that this "would have established reasonable doubt."[81]  Patt apparently desired that his counsel call Fontenette to testify so that Fontenette would assert the privilege in the presence of the jury, hoping that the jury would interpret Fontenette's assertion of the privilege as indicative of Patt's innocence and Fontenette's guilt.  But "neither side has the right to benefit from any

---

[80]     Rec. Doc. 155-1 at 5.

[81]     Rec. Doc. 155-1 at 5.

-20-

inferences the jury may draw simply from the witness' assertion of the privilege either alone or in conjunction with questions that have been put to him."[82]

On the advice of his counsel, Fontenette asserted his Fifth Amendment privilege[83] and, consistent with Fifth Circuit precedent,[84] did not assert the privilege in the presence of the jury.  This prevented his plea from becoming "high courtroom drama and a focus of ineradicable interest" to the jury[85] and it also prevented the jury from making an impermissible inference.  Patt's counsel did not err in not calling Fontenette to the stand.

In summary, Patt's counsel was not ineffective in failing to call any of these witnesses to testify at trial.

### b. FAILURE TO FAMILIARIZE HIMSELF WITH THE FACTS DURING PRETRIAL MOTION PRACTICE

Patt contends that his counsel's assistance was ineffective because his lawyer argued at a suppression hearing that there was no probable cause for the traffic stop

---

[82]     *United States v. Griffin*, 66 F.3d 68, 71 (5th Cir. 1995); quoting *United States v. Johnson*, 488 F.2d 1206, 1211 (1st Cir. 1973).

[83]     Trial Transcript at 486.

[84]     See, e.g., *United States v. Gomez-Rojas*, 507 F.2d 1213, 1220 (5th Cir. 1975).

[85]     *United States v. Griffin*, 66 F.3d at 71.

that led to Patt's arrest in April 2005.  The filing of pretrial motions, such as a motion to suppress evidence, is considered trial strategy.[86]  Consequently, an attorney's use of pretrial motions is entitled to heavy deference and should not be second guessed.[87] "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."[88]

Patt's counsel filed a motion to suppress evidence, and he attempted to challenge the validity of the traffic stop.  He elicited testimony from two witnesses at the hearing that, if found credible, might have shown that the police officer's stated basis for the traffic stop – the loud music emanating from the Cadillac – was not plausible since the speakers may not have been functioning that night.  What the evidence ultimately showed, however, was that the Cadillac's speakers were not connected on days other than the date on which the traffic stop was made.[89]  Patt's witnesses failed to establish that there was no probable cause for the traffic stop, but

---

[86]     *United States v. Lewis*, 786 F.2d 1278, 1783 n. 4 (5th Cir. 1986); *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984).

[87]     *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002); *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir.), *cert. denied*, 528 U.S. 1013 (1999).

[88]     *United States v. Jones*, 287 F.3d at 331, quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983).

[89]     See Transcript of Suppression Hearing.

that did not result from his counsel's ineffectiveness.  A review of the transcript of the suppression hearing shows that Patt's counsel did what he could to challenge the traffic stop, including moving to suppress evidence and vigorously cross-examining the police officers at the suppression hearing.  Patt has not demonstrated that his counsel's actions related to the suppression hearing were professionally unreasonable or prejudiced him in any way.

### c.   FAILURE TO SEEK DISMISSAL OF THE INDICTMENT

Patt contends that his trial counsel was ineffective for failing to seek dismissal of the indictment because there was insufficient evidence to prove the elements of the statute under which he was charged.  Patt does not argue that there was any jurisdictional or constitutional error in the indictment.  His only argument concerns the sufficiency of the evidence concerning the elements of the offense with which he was charged.  Therefore, this is nothing more than yet another attempt to argue that insufficient evidence was presented at trial.  As noted previously, the Fifth Circuit heard – and rejected – this argument on appeal.  Merely couching the same argument in terms of an ineffective assistance of counsel claim cannot resurrect the claim.  As noted previously, the Fifth Circuit does not permit issues raised and disposed of in

a previous appeal to be considered in a subsequent § 2255 motion.[90]  Therefore, this issue should not be considered at this time.

Furthermore, an indictment is sufficient if it sets forth the elements of the offense charged, fairly informs the defendant of the charge he must meet, and precludes the risk of future prosecutions for the same offense.[91]  Patt does not argue that the indictment itself was insufficient in any way; instead, he argues that his counsel was ineffective in failing to seek dismissal of the indictment on the basis that the evidence was insufficient to prove the elements of the crime charged in the indictment.[92]  Unless the defendant is objecting to the indictment on the basis that the court lacks jurisdiction or the indictment fails to actually charge a crime,[93] a defendant must object to an indictment prior to trial,[94] and failure to object at that time constitutes waiver of the objection.[95]  But the sufficiency of the evidence cannot

---

[90]     *United States v. Webster*, 392 F.3d 787, 791 (5th Cir. 2004); *United States v. Rocha*, 109 F.3d 225, 229 (5th Cir. 1997); *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986); *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980).

[91]     *United States v. Alford*, 999 F.2d 818, 823 (5th Cir. 1993); *United States v. Green*, 964 F.2d 365, 372 (5th Cir. 1992).

[92]     Rec. Doc. 155-1 at 5.

[93]     Fed. R. Crim. P. 12(b)(3)(B).

[94]     Fed. R. Crim. P. 12(b)(3)(B).

[95]     Fed. R. Crim. P. 12(e); *United States v. Creech*, 408 F.3d 264, 270 (5th Cir. 2005) (holding that the defendant waived his objection to the indictment by not raising it prior to trial); *United States v. Baytank (Houston), Inc.*, 934 F.2d 599, 608-09 (5th Cir.1991).

be evaluated until after trial.  Therefore, Patt's argument that his counsel was ineffective for failing to seek to have the indictment dismissed on the grounds that the evidence was insufficient to prove the elements of the crime is illogical at best.  He has not articulated a basis on which a valid objection to the indictment could have been based prior to trial.  Consequently, he has not demonstrated that his counsel was ineffective for failing to raise such an objection before trial.

Finally, the "facts" set forth in Patt's memorandum[96] all relate to the sufficiency of the evidence rather than to the sufficiency of the indictment.  Patt's knowledge of the presence of the firearms in the Cadillac's "hidden compartment" was contested both before trial at Patt's detention hearing and also at trial.  It was also the subject of his appeal.  At the detention hearing, Patt attempted to prove that Mary Savoie owned the Cadillac even though it was registered in Patt's name.  Ms. Savoie testified at the detention hearing that she had the "hidden compartment" built when she had the Cadillac customized.  But she could give no details concerning who did the customization work, when it was done, or how much it cost.  Nor could she provide any factual information about the firearms.  Her testimony at the detention hearing was obviously false,[97] and she did not testify at trial.

---

[96]     Rec. Doc. 155-1 at 6.

[97]     Rec. Doc. 59 at 2.

At trial, Patt attempted to prove that he was in prison when the Cadillac was customized, but the government was able to show that a period of time when Patt was released from incarceration overlapped with the time period when the customization likely occurred.

At trial, it also became apparent that possibly no one contracted for the construction of the "hidden compartment" in the Cadillac where the firearms were found on the night of Patt's arrest.  Amos Frugé, Jr. testified that the console contained the "hidden compartment" but the "hidden compartment" could be accessed only by breaking the seals around the console.[98]  He further testified that, if the seals were broken, then this would be obvious to a casual observer.[99]  Therefore, even if Patt was incarcerated when the vehicle was customized, he could have observed that the seals were broken, permitting access to the "hidden compartment."

Ultimately, the jury had to sort through the evidence concerning when the customization was performed, who contracted for it, who knew about the "hidden compartment," who broke the seals, who knew that the seals were broken, and who used the "hidden compartment" as a hiding place for the firearms.  The jury was presented with evidence that Patt was the record owner of the vehicle as well as the

---

[98]     Trial Transcript at 519-522.

[99]     Trial Transcript at 522.

driver of the vehicle at the time of the arrest, that he might have contracted for the Cadillac's customization, and was a person to whom the "hidden compartment" would have been obvious.

Therefore, the "facts" that Patt alleges support dismissal of the indictment are merely part of the evidentiary mosaic presented at pretrial hearings or at trial. These "facts" do not demonstrate that the indictment was insufficient or that Patt's counsel was ineffective for failing to seek dismissal of the indictment before trial. The resolution of factual testimony presented at trial falls within the jury's purview and cannot be challenged by seeking dismissal of an indictment or the vacating of a sentence in a § 2255 motion.

### d.    CONFLICT OF INTEREST

Before he undertook Patt's representation in this action, Patt's trial counsel Peter Q. John represented Roger Fontenette in an unrelated matter.[100]  John was not representing Fontenette at the time that Patt was tried. Patt has not cited any instances in the record suggesting that John faced a dilemma in representing Patt because of his prior representation of Fontenette. Still, Patt contends that John was ineffective because he had a conflict of interest that prevented him from calling Roger

---

[100]    Trial Transcript at 450.

Fontenette to testify at trial and would have prevented him from cross-examining Roger Fontenette had the government called Fontenette to testify.[101]

The Sixth Amendment right to counsel includes the right to representation that is free from any conflict of interest.[102]  In order to establish a violation of this right, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance at trial, thereby rendering the verdict unreliable.[103]  If a defendant shows that his attorney's conflict of interest actually affected the adequacy of his representation, he is entitled to a presumption of prejudice.[104]  In this case, this issue was not raised at trial; therefore, Patt must show that an actual conflict of interest adversely affected John's performance, thereby rendering the verdict unreliable.

An actual conflict exists only when counsel is compelled to compromise his duty of loyalty or zealous advocacy to the accused by choosing between or blending

---

[101]     Rec. Doc. 155-1 at 6.

[102]     *United States v. Garcia-Jasso*, 472 F.3d 239, 243 (5th Cir. 2006); *United States v. Vasquez*, 298 F.3d 354, 360 (5th Cir. 2002), *cert. denied*, 537 U.S. 1024 (2002); *United States v. Vaquero*, 997 F.2d 78, 89 (5th Cir. 1993), *cert. denied*, 510 U.S. 1016 (1993).

[103]     *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980); *Mickens v. Taylor*, 535 U.S. 162, 172 and n. 5 (2002).

[104]     *Cuyler v. Sullivan*, 446 U.S. at 349-50.

the divergent or competing interests of a former or current client.[105]  In other words, an actual conflict exists "when the attorney knows that his clients' interests diverge and must then choose between the interests of multiple clients, or be compelled to compromise his duty of loyalty."[106]

Because John formerly represented Roger Fontenette, the possibility of a conflict of interest existed.  An attorney required to cross-examine a former client "inherently encounters divided loyalties"[107] because "[h]is zeal in defense of his client the accused is... counterpoised against solicitude for his client the witness."[108]  But something more than an attorney's cross-examining his former client must be shown in order for a possible or hypothetical conflict to become an actual conflict.[109]  "To prevail, a defendant must identify 'some plausible defensive strategy or tactic [that] might have been pursued but was not, because of the conflict of interest.'"[110]

---

[105]    *United States v. Culverhouse*, 507 F.3d 888, 892 (5th Cir. 2007), citing *United States v. Garcia-Jasso*, 472 F.3d at 243.

[106]    *United States v. Culverhouse*, 507 F.3d at 892.

[107]    *Perillo v. Johnson*, 205 F.3d 775, 801 (5th Cir. 2000).

[108]    *Perillo v. Johnson*, 205 F.3d at 802.

[109]    *United States v. Burns,* 526 F.3d 852, 856 (5th Cir. 2008); *Perillo v. Johnson*, 205 F.3d at 801-02.

[110]    *Hernandez v. Johnson*, 108 F.3d 554, 560 (5th Cir. 1997), quoting *Perillo v. Johnson*, 79 F.3d 441, 449 (5th Cir. 1996).

In this case, no such showing was made.  Roger Fontenette invoked his Fifth Amendment privilege against self-incrimination and did not testify at trial.  There is nothing that Patt's counsel could have done to compel Fontenette to testify, since a defendant's Sixth Amendment rights do not override the Fifth Amendment rights of others.[111]  Furthermore, Fontenette's invocation of his rights made it impossible for Patt's counsel to cross-examine him.

Both the prosecution and the defense intended to call Fontenette to testify at trial.  But when it came to the court's attention that Fontenette, himself a convicted felon, might incriminate himself if he testified, counsel was provided for Fontenette, who then requested his retained counsel.  Fontenette did not waive his Fifth or Sixth Amendment privileges.[112]  Therefore, he could not be compelled to testify, and he could not be cross-examined.  The potential conflict of interest did not ripen into an actual conflict.  Because Patt has not demonstrated that there was an actual conflict of interest, he is not entitled to a presumption of prejudice.  Furthermore, he has not demonstrated that the assistance he received from his trial counsel was ineffective because Fontenette did not testify at trial.

---

[111]     *Brown v. Cain*, 104 F.3d 744, 749 (5th Cir. 1997) ("a witness' right against self-incrimination will outweigh a defendant's right to force that witness to testify"); *United States v. Whittington*, 783 F.2d 1210, 1218-19 (5th Cir. 1986), *United States v. Lacouture*, 495 F.2d 1237, 1241 (5th Cir.), *cert. denied*, 419 U.S. 1053 (1974).

[112]     Trial Transcript at 486.

### e.   CUMULATIVE ERRORS

Patt claims that his trial counsel's cumulative errors entitle him to relief for ineffective assistance of counsel.  A defendant's claim of cumulative error may afford him relief, if the errors prevent a fair trial.[113]  In this case, the undersigned has found, as explained above, that none of the alleged cumulative errors have merit. Consequently, Patt has not demonstrated that he was denied a fair trial.  Therefore, Patt's claim of cumulative error also fails.[114]

### Issue Three

Finally, Patt again contends that he received ineffective assistance of counsel at trial because his attorney had an actual conflict of interest.  This claim duplicates one of the alleged "cumulative errors" discussed above, was refuted in that context, and need not be discussed further.

### Conclusion

For the reasons stated above,

---

[113]    *Cannady v. Dretke*, 173 Fed. App'x 321, 328 (5th Cir. 2006), citing *Lisenba v. California*, 314 U.S. 219, 236 (1941).

[114]    See *United States v. Tremelling*, 43 F.3d 148, 153 (5th Cir. 1995), citing *United States v. McCarty*, 36 F.3d 1349, 1359-60 (5th Cir. 1994).

**IT IS RECOMMENDED** that Patt's motion to vacate, set aside, or correct his sentence (Rec. Doc. 155) be **DENIED**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this report and recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with a copy of any objections or response to the District Judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be

taken to the court of appeals.  Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.  *See* 28 U.S.C. § 2253(c)(2).  A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

Signed at Lafayette, Louisiana, this 27th day of October, 2010.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)